**STATE of Iowa, Appellee,**

v.

**Douglas Donald FINTEL, Appellant.**

No. 03–0889.

Supreme Court of Iowa.

Nov. 10, 2004.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

CARTER, Justice.

Defendant, Douglas Fintel, appeals from his conviction and sentence for conspiracy to manufacture methamphetamine in violation of Iowa Code section 124.401(1)(*b*)(7) (2001). He urges that (1) the jury instructions were confusing and led to an inconsistent verdict, (2) there was insufficient evidence of a conspiracy, (3) the sentencing enhancement imposed pursuant to Iowa Code section 124.401C was not applicable, and (4) his trial counsel provided ineffective assistance. After reviewing the record and considering the arguments presented, we agree that the sentencing enhancement contained in section 124.401C should not have been applied to defendant's sentence. In all other respects, we affirm the judgment of the district court.

Shortly after midnight on December 5, 2002, the Waterloo Police Department dispatched several officers to an apartment complex located at 1308 West Fourth Street. The police officers were sent to investigate a complaint from a resident of the complex. The complaint concerned a strong smell of ammonia coming from an apartment within the complex.

Officers Allspach and Saunders were the first to arrive at the apartment complex. Officer Allspach testified that, when he opened the main entrance door to the apartment building, he was overwhelmed by the smell of ether. Officers Nemmers, Carter, Gehrke, Rulapaugh, and Sullivan were dispatched to assist Officers Allspach and Saunders. These officers arrived at the apartment complex approximately five minutes after Officers Allspach and Saunders.

The police officers decided to evacuate the residents of the apartment complex. The officers also determined that the ammonia and ether smells were coming from apartment number five. This determination was based on the observations of several officers who saw an individual sitting on a chair or stool surrounded by plastic jugs and glass jars with tubing coming out of a plastic jug in apartment number five. Specifically, Officers Allspach, Saunders, Nemmers, and Rulapaugh testified that they observed this individual through a basement window to apartment number five. Additionally, Officers Allspach, Saunders, and Nemmers testified that they believed the individual they observed was "cooking" methamphetamine. This individual was identified as Randy Corsi.

After determining that the ammonia and ether smells were coming from apartment

five and that methamphetamine was likely being manufactured in the apartment, the officers decided to enter the apartment and remove its occupants. The officers broke through the door to the apartment and ordered its occupants to the ground. The individuals that occupied the apartment were taken into custody and removed from the apartment.

Officer Sullivan transported the defendant from the apartment complex to the Waterloo Police Department. The defendant waived his *Miranda* rights and spoke with Officer Sullivan.[1] Defendant told Officer Sullivan that he lived at apartment number five and shared the rent with Cheryl Refshauge, who also lived in the apartment. Defendant also told Officer Sullivan that he knew methamphetamine was being produced in the apartment and that he knew it was wrong, but his drug addiction allowed it to happen. Defendant denied cooking the methamphetamine, procuring any of the ingredients, or being involved in any manner with the methamphetamine-making process.

Defendant also spoke with Officer Gehrke.[2] Defendant told Officer Gehrke that he lived at apartment number five. He also told Officer Gehrke that he knew the reason for the police being at his apartment complex and that he knew what had been going on in his apartment before the police arrived. Defendant also acknowledged that he knew the substances that were in his apartment, including acid and anhydrous ammonia.

Cheryl Refshauge testified that both she and the defendant lived in apartment number five. She testified that the defendant had lived in her apartment, renting one of

---

1. The information from the conversation between Officer Sullivan and the defendant comes from Officer Sullivan's trial testimony.

2. The information from the conversation between Officer Gehrke and the defendant comes from Officer Gehrke's trial testimony.

the two bedrooms, for three to four months. Refshauge also testified that she did not see the defendant in her bedroom where the methamphetamine was being manufactured or see him use methamphetamine that night. However, Refshauge testified that, in the months prior to December 4, 2002, she had witnessed the defendant use methamphetamine.

Defendant testified that, on the evening of December 4, 2002, he had dinner and hung out with Cheryl Refshauge, Randy Corsi, and Guy Fremont in his apartment. Sometime after 11 p.m., Refshauge and Corsi left the apartment to buy beer at Kwik Star, which is a ten-minute walk from the apartment. Approximately ten to fifteen minutes after Refshauge and Corsi left, Bruce Fuller and Joe McAhren came to the apartment.

Defendant testified that Fuller and McAhren walked into the apartment without knocking. Defendant further testified that Fuller was carrying a small plastic bowl and a duffle bag. Upon entering the apartment, Fuller asked, "Does anyone want to get high?" Fuller then went into the defendant's bedroom. Defendant testified that he followed Fuller into his bedroom in order to get high.

While inside defendant's bedroom, Fuller took something out of the duffle bag and began mixing it in the plastic bowl. Defendant stood by Fuller while he was mixing the contents of the bowl. Defendant testified that, when the fumes from the bowl became "really really bad," he asked Fuller to take the mixture out of his room. Defendant further testified that, after being asked three times to leave, Fuller exited his bedroom and went to Refshauge's bedroom with the plastic bowl.

Defendant testified that he wanted Fuller to take the bowl and its contents out of the apartment, so he went to Refshauge's bedroom and asked Fuller to leave. Defendant further testified that he found the door to Refshauge's bedroom locked. He pounded on the door and asked Fuller to leave the apartment. Around this time, Ms. Refshauge returned to the apartment from the Kwik Star and became upset when she learned what was happening in her bedroom. At this point, defendant testified that he returned to his room and told Ms. Refshauge to deal with the situation because the individuals involved were her friends and were in her bedroom. The defendant stayed in his room until the police entered the apartment and took everyone outside.

Bruce Fuller testified that he was at defendant's apartment on December 4, 2002. He also testified that he went to the apartment in order to "bubble dope." Fuller testified that he procured all the ingredients for the methamphetamine himself and that no one helped him in the process of making the methamphetamine.

## I. *Standard of Review.*

■ Alleged errors in jury instructions are reviewed for corrections of errors at law. Iowa R.App. P. 6.4; *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996). Error in giving a jury instruction does not merit reversal unless it results in prejudice to the defendant. *Kellogg,* 542 N.W.2d at 516.

■ Challenges to the sufficiency of the evidence supporting a guilty verdict are reviewed for correction of errors at law. *State v. Webb,* 648 N.W.2d 72, 75 (Iowa 2002). The verdict must be supported by substantial evidence. *Id.* Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.* at 76. The evidence is reviewed in the light most favorable to the State and all of the

evidence presented at trial, not just evidence that supports the verdict, is considered. *Id.* The State has the burden to prove every fact necessary to constitute the crime with which the defendant is charged, and the evidence presented must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture. *Id.*

 Issues of statutory interpretation are also reviewed for errors at law. *State v. Cartee,* 577 N.W.2d 649, 652 (Iowa 1998). Review of an allegation of ineffective assistance of counsel is de novo. *State v. Bergmann,* 600 N.W.2d 311, 313 (Iowa 1999).

**II.** ***Whether Jury Instructions 17 and 18 Created Confusion Among the Jurors Because They Acquitted the Defendant of Manufacturing Methamphetamine, but Convicted Him of Conspiracy to Manufacture Methamphetamine, Thereby Raising Issues of Double Jeopardy and Collateral Estoppel.***

 A. *Arguments.* Defendant argues jury Instructions 17 and 18 are cumulative, confusing, and prejudicial because alternative "A" in instruction 18 amounts to a restatement of Instruction 17. Defendant maintains jury confusion is apparent because he was acquitted of the manufacturing charge (Instruction 17), but convicted on the charge of conspiracy to manufacture methamphetamine (Instruction 18). Defendant contends that double jeopardy is at issue because, based on the confusing nature of Instructions 17 and 18, he was convicted of the same crime in which he was acquitted. Defendant further argues collateral estoppel is at issue because the prior proceeding (the trial) demonstrates that the jury acquitted him on the same basis and employing the same facts it used to convict him.

B. *Analysis.* Iowa Code section 124.401(1) provides in pertinent part:

[I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance ... or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance.

Instruction 17 provided that, in order to prove defendant guilty of manufacturing a controlled substance, the State needed to show defendant: (1) "manufactured methamphetamine," or (2) "aided and abetted another who manufactured methamphetamine," or (3) "acted together with another who manufactured methamphetamine."

Instruction 18 provided three alternative ways in which the State could prove defendant guilty of conspiracy to manufacture a controlled substance. Alternative "A" required proof that "the defendant knowingly acted with one or more persons to manufacture or attempt to manufacture methamphetamine."

Alternative "B" required proof that "the defendant entered into a common scheme or design with one or more persons to manufacture or attempt to manufacture methamphetamine." Alternative "C" required proof that "the defendant agreed with one or more persons that one or more of them would commit the offense of manufacturing or attempting to manufacture methamphetamine."

In considering defendant's argument, we have substantial doubt that inconsistent verdicts returned by the jury in the same trial can give rise to a double jeopardy violation or create a collateral estoppel. As the court of appeals has concluded, inconsistent verdicts on multiple counts in the same trial do not ordinarily taint the validity of a verdict of guilt. *State v.*

*Pearson,* 547 N.W.2d 236, 241 (Iowa Ct. App.1996). Such inconsistencies may result from the jury's exercise of its power of leniency. *Id.* In *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, 359 (1932), the Supreme Court held that a criminal defendant could not challenge a conviction on one count of a multiple-count indictment solely because it may be inconsistent with an acquittal by the jury on another count. The court stated that "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Id.*

█ If jury verdicts are to be examined for inconsistency, the test to be applied is whether the verdict is so logically and legally inconsistent as to be irreconcilable within the context of the case. *Hoffman v. Nat'l Med. Enters., Inc.,* 442 N.W.2d 123, 126–27 (Iowa 1989). Under that test, defendant's assertion of inconsistency fails. The same instructions that are challenged in the present case were considered by this court in the appeal of Fintel's codefendant in *State v. Corsi,* 686 N.W.2d 215, 222 (Iowa 2004). In *Corsi* we recognized that, although all of the alternatives contained in Instruction 18 were not technically elements of a conspiracy, they did accurately instruct the jury as to the various methods in which a person could violate Iowa Code section 124.401(1) without actually completing a manufacture of a controlled substance. *Corsi,* 686 N.W.2d at 222.

In contrast, the elements set forth in Instruction 17 convey to the jury the various methods by which a person may violate that statute by causing the completed manufacture of a controlled substance. For this reason, there was no inconsistency or duplication in the instructions. Nor was there any inconsistency in the jury's acquittal of defendant with respect to a completed manufacture of a controlled substance under the elements of Instruction 17 while convicting him based on the elements of this statutory crime that do not require a completed manufacture.

### III. Whether There Was Sufficient Evidence to Find Defendant Participated in a Conspiracy to Manufacture Methamphetamine.

█ A. *Arguments.* Defendant argues the evidence does not establish that he entered into any agreement, plan, or conspiracy to manufacture methamphetamine. Defendant maintains there is no direct evidence that he participated in a conspiracy. Defendant points out that, at the trial, Bruce Fuller testified he acted alone in manufacturing the methamphetamine. Additionally, defendant points out no other witnesses testified that defendant took part in securing, delivering, or processing the chemicals used for manufacturing the methamphetamine. Defendant further argues the circumstantial evidence only shows his presence and knowledge as to the manufacturing of the methamphetamine.

█ B. *Analysis.* Iowa Code section 706.1 provides:

A person commits conspiracy with another if, with the intent to promote or facilitate the commission of a crime which is an aggravated misdemeanor or felony, the person does either of the following:

*a.* Agrees with another that they or one or more of them will engage in conduct constituting the crime or an attempt or solicitation to commit . the crime.

*b.* Agrees to aid another in the planning or commission of the crime or of an attempt or solicitation to commit the crime.

In order to find defendant conspired to manufacture methamphetamine, the State was required to show: (1) the defendant agreed with one or more persons that one or both of them would manufacture or attempt to manufacture methamphetamine, (2) the defendant entered into such an agreement with the intent to promote or facilitate the manufacture of methamphetamine, (3) one of the parties to the agreement committed an overt act to accomplish the manufacturing of methamphetamine, and (4) the alleged coconspirator(s) was not a law enforcement agent or assisting law enforcement when the conspiracy began. *State v. Speicher*, 625 N.W.2d 738, 741 (Iowa 2001); *see also* Iowa Code § 706.1(1)-(4).

An agreement to form a conspiracy may be described as a "concert of free wills," "union of the minds of at least two persons," and "a mental confederation involving at least two persons." *Speicher*, 625 N.W.2d at 741–42 (citing *State v. Boyer*, 342 N.W.2d 497, 499 (Iowa 1984)). The agreement may be proven through circumstantial evidence and inferences drawn from that evidence. *State v. Casady*, 597 N.W.2d 801, 804–05 (Iowa 1999). Furthermore,

> "[a]n agreement that, because of its purpose or the means contemplated, amounts to a conspiracy need not be formal or express, but may be a tacit understanding; the agreement may be inherent in and inferred from the circumstances, especially declarations, acts, and conduct of the alleged conspirators."

*Id.* at 805 (quoting *State v. Mapp*, 585 N.W.2d 746, 748 (Iowa 1998)). However, circumstantial evidence that proves mere presence at the scene of the crime or association with those involved in the crime is not sufficient to show an agreement. *Speicher*, 625 N.W.2d at 742–43.

Guided by the foregoing principles, we are convinced that the following circumstances, as shown by the evidence, are sufficient to support a jury's finding that defendant conspired to manufacture methamphetamine: (1) defendant knew methamphetamine was being manufactured in his apartment, (2) he was present when the manufacturing process occurred, (3) he had knowledge of the presence of acid and anhydrous ammonia in his apartment, (4) he admitted to police officers that his addiction had driven him to allow the methamphetamine to be manufactured in his apartment, (5) when Bruce Fuller entered defendant's apartment and asked "Does anybody want to get high?," defendant followed him into the bedroom where the manufacturing commenced with the intention of getting high, and (6) defendant's apartment was littered with the necessary ingredients and utensils for manufacturing methamphetamine.[3] Defendant's chal-

---

**3.** Defendant's testimony was as follows:

Q. What happened when [Fuller] came in the apartment. A. I seen Bruce was comin' through first and Joe [McAhren] was right behind him and they were comin' down the little hallway right into the living room. He was carrying a small little plastic mixing bowl.

Q. Okay. Did you see what was inside the bowl that he had? A. Not at that time, no. I was sitting down.

Q. Okay, where did he go once he entered the apartment? A. He asked if—the first thing he said is, "Does anybody want to get high?" And he walked straight into my room and I walked in behind him.

Q. You walked in behind him? A. Yeah.

Q. Why did you do that? A. Because what he said I guess.

Q. What he said, if you wanted to get high? A. Yes.

Q. And you walking behind him indicated that, yes, you did; is that right? A. I guess, yes.

Q. What happened when you go into the bedroom? A. He went and set the bowl down on my dresser. I don't know, my dresser is probably about 3 feet high, and

lenge to the sufficiency of the evidence is rejected.

### IV. *Whether the District Court Erred in Applying Iowa Code Section 124.401C at Defendant's Sentencing.*

■ A. *Arguments*. Essentially, defendant argues that this statute by its terms only applies to manufacturing methamphetamine, not conspiracy to manufacture methamphetamine. Because defendant was acquitted of the manufacturing charge, he argues the district court improperly enhanced his sentence. The State argues the enhancement provision does not require a particular amount of methamphetamine to be manufactured, and therefore, the statute encompasses a conspiracy to manufacture methamphetamine that is established by an overt act just short of production.

B. *Analysis*. The defendant's sentence was increased pursuant to Iowa Code section 124.401C(1), which provides:

> In addition to any other penalties provided in this chapter, a person who is eighteen years of age or older and who either directly or by extraction from natural substances, or independently by means of chemical processes, or both, unlawfully manufactures methamphetamine, its salts, isomers, and salts of its isomers in the presence of a minor shall be sentenced up to an additional term of confinement of five years.

Iowa Code section 124.101(16) defines "manufacturing" as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance." We have recognized that this definition requires the actual production of the illegal material. *Corsi*, 686 N.W.2d at 224 (citing *State v. Royer*, 632 N.W.2d 905, 908 (Iowa 2001)); *Casady*, 597 N.W.2d at 807. Because the defendant was acquitted of those violations of section 124.401(1) that require a completed manufacture of a controlled substance, his sentence should not have been enhanced pursuant to Iowa Code section 124.401C.

### V. *Whether Defendant's Trial Counsel Provided Ineffective Assistance of Counsel.*

■ A. *Arguments*. Defendant argues his trial counsel was ineffective because he failed to object to jury Instructions 2, 4, and 5 as prejudicial misstatements of the law. Defendant maintains Instructions 2, 4, and 5 are improper because they instruct the jury to determine his guilt or innocence. Defendant contends the term "innocence" versus the term "guilty beyond a reasonable doubt" places an unconstitutional burden on him to prove his innocence rather than requiring the State to prove his guilt beyond a reasonable doubt.

The State argues defendant's trial counsel was not ineffective because he had no duty to pursue any meritless claims. The State maintains Instructions 2, 4, and 5 were properly clarified by other instructions provided to the jury; specifically, Instructions 6 and 8, which explained the State had the burden to prove the defendant guilty beyond a reasonable doubt and defined reasonable doubt.

B. *Analysis*. Instruction 2 provides in pertinent part: "You must determine the defendant's guilt or innocence from the evidence and the law in these instructions." Instruction 4 provides in pertinent

---

threw the duffle bag on the bed and said that I—I got some meth in my pocket and

we'll get high. . . .

**104**

part: "If you find a defendant innocent or guilty on any one of the counts, you may not conclude guilt or innocence on the others." Finally, Instruction 5 provides in pertinent part: "The guilt or innocence of each defendant must be determined solely upon individual participation in the crime."

 In order to establish ineffective assistance of counsel, it must be shown that the trial counsel failed to perform an essential duty, and his or her omission resulted in prejudice. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

Jury instructions are not considered separately; they should be considered as a whole. *State v. Langlet*, 283 N.W.2d 330, 337 (Iowa 1979).

In *Langlet* the defendant complained about the use of the word "innocence" in his jury instructions. *Id.* We determined that the other jury instructions which provided that the burden of proof was on the State and that the defendant had the presumption of innocence until proven guilty beyond a reasonable doubt were adequate clarifications of the challenged instructions. *Id.* Similar considerations exist in the present case. Instructions 6 and 8 clarify any issues involving the word "innocence" in Instructions 2, 4, and 5. Instruction 6 explains that the State has the burden to show the defendant was guilty beyond a reasonable doubt. Instruction 8 again provides that the burden is on the State to prove guilt beyond a reasonable doubt and also defines reasonable doubt for the jury.

Because Instructions 2, 4, and 5 were clarified by Instructions 6 and 8 and therefore were not prejudicial to the defendant, trial counsel was not ineffective for failing to object to the instructions. *See State v. Hochmuth*, 585 N.W.2d 234, 238 (Iowa 1998) (holding trial counsel was not inef-

fective for failing to pursue a meritless issue).

We have considered all issues presented and conclude that defendant's conviction should be affirmed. Because the sentencing enhancement contained in Iowa Code section 124.401C should not have been applied, we vacate defendant's sentence and remand the case to the district court for resentencing.

**JUDGMENT OF CONVICTION AFFIRMED, SENTENCE VACATED, AND CASE REMANDED.**