# IN THE COURT OF APPEALS OF IOWA

No. 13-0069
Filed April 16, 2014

**EDDIE CHEST,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

A criminal defendant appeals from denial of his application for postconviction relief. **SENTENCE VACATED AND REMANDED.**

Steven J. Drahozal of Drahozal Law Office, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Ralph Potter, County Attorney, and Christine O. Corken, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**MULLINS, J.**

Eddie Chest appeals from a ruling denying him postconviction relief following his guilty pleas to attempted murder and robbery in the first degree. Chest raises three claims: first, he contends trial counsel was ineffective in failing to object after the State allegedly breached their plea agreement; he further contends appellate and postconviction counsel were ineffective in failing to raise the claim in those proceedings. Second, he contends trial counsel was ineffective in failing to withdraw his guilty plea after the alleged breach of the plea agreement. Third, he contends the district court imposed the sentence illegally when it failed to comply with sentencing requirements under Iowa Code section 901.5 (2009); alternately, he argues trial, appellate, and postconviction counsel were ineffective in failing to raise this claim. We find the State breached the plea agreement. Trial counsel should have raised an objection, and Chest suffered prejudice as a result. Therefore, we vacate the sentence and remand for a new sentencing hearing.

**I.      Facts and Background Proceedings.**

On December 3, 2009, Eddie Chest and his son robbed a pub in Dubuque. Chest and his son wore ski masks and bore sawed-off shotguns. There were about twenty diners in the pub eating lunch. Chest and his son entered, pointed the shot guns at the diners, and forced an employee to give them money from the cash register and safe. Police officers responded to reports of a robbery at the pub. While escaping from the scene on foot, Chest

fired his shotgun at a pursuing police officer. The shot ricocheted off the sidewalk and hit the officer in the abdomen, wrist, thigh, and arm.

Chest and the State reached a plea agreement that Chest would plead guilty to attempted murder and robbery in the first degree. The plea to attempted murder was an *Alford* plea. Each charge carried a twenty-five year sentence. In exchange, the State would recommend concurrent sentences. At the plea hearing, the district court repeatedly informed Chest that the negotiations with the State were not binding upon the court. Chest stated he understood this and wished to proceed with his pleas. The district court accepted Chest's pleas, ordered a presentence investigation, and set the case for a sentencing hearing. The presentence investigation report detailed an extensive criminal history involving multiple periods of incarceration. Chest himself stated he had spent twenty-nine years in prison. At the time of the robbery, Chest had been out of prison on parole only five months. He was seventy-two-years old at the time of sentencing. The presentence investigation report recommended twenty-five years on each count, to be served consecutively.

At the sentencing hearing, the prosecutor stated the following:

> We're here today for the sentencing of Mr. Chest. The State stands by its original plea negotiation, which was for a concurrent sentence of twenty-five for the attempted murder and twenty-five for the armed robbery. We made no apologies for when we entered into it intentionally knowing this to be the correct remedy for this particular offense.
> But this is a very hard day to stand before the Court. This is a crime that impacts all kinds of victims in this community. The Defendant came to town, solely to commit a crime, solely to commit a robbery. It was not just the victim, the bar patrons, but the—that were victimized. That were told to lay on the ground and have guns pointed at them when they went just to have a beer and a lunch.

We have the people walking or driving down Central Avenue, which is one of our main thoroughfares, on a—on a work day, who have the right to be in that area, nonetheless, without a shotgun going off. We have the people who send off their spouses, who happened to be police officers, in the morning to work, hoping and having faith that they will come home intact and alive at the end of the shift, and we have a community that believes that when we put police officers in uniforms and give them guns and send them out into the community, that they are there and they are going to protect us.

Nobody anticipated this would result in what it did result in. The State has great belief in the integrity of the court system, and that the court system can solve these problems. Not solve these problems, but can address these problems in the way that is most appropriate. The State has no qualms about making a recommendation for a susp—or excuse me, for a concurrent sentence in this matter because of Mr. Chest's age and because of Mr. Chest's willingness to come forward and admit to what he did. Our community has the right to be protected. This kind of crime runs at the entire fabric of our community, not just the individual persons who were hurt, but the community has the right to believe that we are going to be safe going through an ordinary course of business.

I believe that this remedy deals appropriately with this, with this Defendant; that this is a way not only to keep the community safe, but to send the message that this behavior will not be tolerated, that we cannot—we cannot live like this. We cannot expect people to live like this. We cannot put people in uniforms and send them off to work and tell them that, if you're shot at, we don't really much care. We are not going to live that way. For these reasons, Your Honor, after entering into the negotiations that we did, we stand by it, we believe in it, we stand by it today. We believe it's an appropriate sentence, and it's the correct sentence in this particular matter.

Chest's trial counsel then made a statement recommending concurrent sentences. The court imposed consecutive twenty-five-year sentences, stating the following:

A couple of things cause me very severe concern. I look through, the pre-sentence investigation, Mr. Chest, and I realize that at your age, a good portion of your life has been spent doing things that are illegal and against the norms of society. You woke up that morning, you left Freeport, and you came here, instead of

the design to go to the aquarium, to the riverboat, you came here with the design to commit a crime.

. . . .

. . . [Y]ou didn't come here with any other design. You had no reason to be here.

. . . .

We like to think that this is a safe community. You know, we all live here with children and families. We all respect the officers that try to protect that. They put their lives on the line every day, to make sure that this is a safe community. And the other thing that causes me severe concern is, this was broad daylight. That's as bold as any criminal conduct I have ever witnessed, in my eighteen years of practicing law. And I remember the day, I remember when it came across, the whole entire city, there was a crime committed in broad daylight, and Officer Baxter was shot. That was a horrible thing for us to hear. Horrible.

And you were on parole. So I have no hope and no faith, based on your history, and what you did, that if I did give you a concurrent sentence, and you did have any possibility of getting out, that you wouldn't do something again. So I really thought long and hard about this. I spent a good deal of time here last night going over this and trying to figure out what it is that I could say to you.

Most of the time, when I see young men come into this courtroom, I try to talk to them about rehabilitation. Change your thought process. Move forward with your lives. Become very good citizens based on the fact that you're learning from your experiences. You don't seem to be able to do that, sir. And I guess the reason for what your children do, the only thing I can do is point to what you did. Twenty children. Twenty children, put into this world, that have you as a role model. One crime after the other.

I have a great deal of respect for this police force and our sheriff's office here in this county. They come in here every day. When they testify, they provide information to this Court. I hope that I can trust everything that they tell me. I hope that they are doing exactly what they are taught and trained to do, and I know every day, they are leaving someone at home, and someone who's concerned about whether or not what you did that day may result in the loss of a family member. The loss of a father in Mr. Baxter's case. The loss of a husband, a son. You had a sawed-off shotgun. Not just something simple. You disguised yourself. You went in there, and you put those people in a terrible mental state. You have to think about that. In broad daylight.

And concurrent sentence, I understand, is what you negotiated for. I did express to you at the time that I took that plea

that I am not bound by that, and I won't be bound by that. I look at this PSI, and I indicated, and I'll tell you again, I have given it a great deal of consideration, and I will not impose a concurrent sentence.

Chest filed a motion to reconsider the sentence because it was contrary to the plea agreement, which the court denied. On direct appeal, Chest argued the district court considered an inappropriate factor, the number of children he had fathered, in sentencing. *State v. Chest*, No. 11-0262, 2011 WL 4952951, at *1 (Iowa App. Oct. 19, 2011). We affirmed the sentences, finding the district court did not consider this factor inappropriately. *Id.* at *3. The supreme court denied further review. *Id.*

On his postconviction application Chest asserted his trial counsel informed him the court would certainly accept the State's recommendation of concurrent sentences if Chest agreed to plead guilty. Chest also argued counsel was ineffective in failing to file a motion in arrest of judgment asserting the attempted murder plea lacked a factual basis. After taking testimony from trial counsel,[1] the postconviction court found trial counsel had adequately informed Chest that the plea bargain was not binding on the court. The postconviction court also found that because there was a clear factual basis for the plea, trial counsel had no duty to file a motion in arrest of judgment and, therefore, was not ineffective. On appeal from the postconviction court, Chest raises three different claims

---

[1] Chest had two attorneys at trial. Both testified to substantially the same facts regarding their advice to Chest regarding the likelihood of the court accepting the State's recommendation pursuant to the plea bargain.

regarding trial counsel's ineffectiveness, arguing appellate and postconviction counsel were ineffective in not raising them prior to this appeal.

## II.     Standard of Review.

We generally review postconviction proceedings for correction of errors at law. *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011). However, when the applicant's claims are of a constitutional nature, as in ineffective-assistance-of-counsel claims, we engage in a de novo review. *Id.*

## III.     Analysis.

### A.     Failure to Object to Breach of Plea Agreement.

> In evaluating defense counsel's performance, we presume counsel is competent. To overcome this presumption, the defendant must prove that counsel's performance fell below the normal range of competency. Our task, then, is to determine whether [Chest] has demonstrated that a reasonably competent attorney would have objected to the prosecutor's statements as a breach of the negotiated plea agreement. . . . [D]efense counsel has not failed to perform an essential duty when counsel fails to raise a claim or make an objection that has no merit. Accordingly, the defendant's counsel here cannot be faulted for failing to object to the prosecutor's statements as being a breach of the plea agreement if, in fact, they were not contrary to the State's agreement. Therefore, we first consider whether the State breached the plea agreement.

*State v. Horness*, 600 N.W.2d 294, 298 (Iowa 1999) (internal citations omitted). We then decide whether trial counsel provided ineffective assistance in failing to object to the breach.

### 1.     Did the State Breach the Plea Agreement?

Chest argues the prosecutor cannot make a recommendation and then argue against it, but must present the recommended sentence with his or her approval. Chest asserts the prosecutor's statement indicated to the court that a

concurrent sentence was not genuinely worthy of the court's acceptance, and arguing against the recommendation constituted a breach of the plea agreement. The prosecutor did state multiple times that she thought the plea was appropriate "because of Mr. Chest's age" and his "willingness to come forward and admit to what he did." However, the prosecutor went on at some length to emphasize that Chest came to the area solely to commit the robbery and that his actions victimized the bar patrons and other residents. The prosecutor also stated it was "a hard day to stand before the court," that the community "cannot live like this," and that "this kind of crime runs at the entire fabric of our community."

Our supreme court has determined that when the State assumes an obligation to make a certain sentencing recommendation as part of a plea agreement, "mere technical compliance is inadequate; the State must comply with the spirit of the agreement as well." *State v. Horness*, 600 N.W.2d 294, 296 (Iowa 1999).

> A fundamental component of plea bargaining is the prosecutor's obligation to comply with a promise to make a sentencing recommendation by doing more than simply informing the court of the promise the State has made to the defendant with respect to sentencing. The State must actually fulfill the promise. Where the State has promised to "recommend" a particular sentence, we have looked to the common definition of the word "recommend" and required
>
>> the prosecutor to present the recommended sentence with his or her approval, to commend the sentence to the court, and to otherwise indicate to the court that the recommended sentence is supported by the State and worthy of the court's acceptance.

*State v. Bearse*, 748 N.W.2d 211, 215-216 (Iowa 2008) (internal quotations and citations omitted).

Despite the prosecutor's assurances that the recommendation was appropriate, her disclosure that it was "hard to stand before the court" and give this recommendation, her evocative recounting of the alarming facts of the case—that Chest traveled to the area solely to commit a crime, that it occurred "in broad daylight," that such crime deeply affects the community—and her suggestion that the sentence sent a message to law enforcement officers and their families that "we don't care" overall did not give the impression that the prosecutor approved of the recommendation or sincerely commended it to the court as being worthy of the court's acceptance. The court's reasoning in imposing consecutive sentences directly echoes many of the points in the prosecutor's statements. The prosecutor's reluctant and contradictory statements made it all too easy for the court to disregard the State's and the defendant's recommendation and impose the greater sentence recommended by the PSI. Because plea agreements are "essential to the efficient administration of justice," and because a plea agreement "requires a defendant to waive fundamental rights," "we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance." *See Bearse*, 748 N.W.2d at 215. The prosecutor's recommendation here failed to meet that standard; therefore, we find the State breached the plea agreement.

**2.     Was Trial Counsel Ineffective in Failing to Object to the State's Breach of the Plea Agreement?**

To prevail on a claim of ineffective assistance of counsel, the applicant must prove by a preponderance of the evidence (1) trial counsel failed to perform

an essential duty and (2) prejudice resulted. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

Trial counsel has a duty to object where the State fails to fulfill its obligations pursuant to a plea agreement. *See State v. Fannon*, 799 N.W.2d 515, 522 (Iowa 2011). Here, trial counsel failed to object to the State's breach of the plea agreement, or request Chest be given an opportunity to withdraw his guilty pleas or a new sentencing hearing before a different judge. *See id.* Consequently, counsel failed in an essential duty.

To establish prejudice, Chest must show that "the outcome of the proceeding would have been different." *Id.* at 523. "A defendant who pleads guilty in reliance on a promise from the State suffers prejudice when the State later breaks that promise." *State v. Carillo*, 597 N.W.2d 497, 500 (Iowa 1999). "Where a prosecutor breaches a plea agreement, the remedy is either specific performance of the agreement, or withdrawal of the guilty plea." *State v. Carillo*, 597 N.W.2d 497, 500 (Iowa 1999). Trial counsel's failure to object deprived Chest of a sentencing hearing free from the influence of the prosecutor's breach and of either of the possible remedies. *See Fannon*, 799 N.W.2d at 523; *Carrillo*, 597 N.W.2d at 501. Consequently, trial counsel was ineffective.

**B.     Failure to Withdraw Guilty Plea.**

Chest argues his trial counsel was ineffective in failing to withdraw the guilty pleas when the State breached the plea agreement. He further asserts, alternately, counsel should have withdrawn his guilty plea at the sentencing hearing when the court indicated it would not impose concurrent sentences. He

asserts counsel could have withdrawn the plea at any time prior to judgment, pursuant to Iowa Rule of Criminal Procedure 2.8(2).

Iowa Rule of Criminal Procedure 2.10(4) provides:

> If, *at the time the plea of guilty is tendered*, the court refuses to be bound by or rejects the plea agreement, the court shall inform the parties of this fact, afford the defendant the opportunity to then withdraw defendant's plea, and advise the defendant that if persistence in a guilty plea continues, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement. If the defendant persists in the guilty plea and it is accepted by the court, the defendant shall not have the right subsequently to withdraw the plea except upon a showing that withdrawal is necessary to correct a manifest injustice.

(Emphasis added.) Although the court repeatedly informed Chest at the plea hearing that it would not be bound by the plea agreement, Chest chose to persist in the guilty plea. By the end of the plea hearing, there was no cause "necessary to correct a manifest injustice" to withdraw the plea.

We have already stated that trial counsel was ineffective in failing to object to the breach in the plea agreement at the sentencing. The appropriate remedy at that time would have been either specific performance of the agreement, or withdrawal of the guilty plea. *See Carrillo*, 597 N.W.2d at 500. Chest asserts, "[I]f counsel had withdrawn the plea, it is likely that Mr. Chest could have secured a plea agreement for a single 25 year sentence." Chest cites no evidence in the record to support this assertion and we find none. Chest suffered prejudice as a result of counsel's failure to object and one possible remedy was withdrawal of the guilty plea. Therefore, counsel was ineffective in failing to attempt to withdraw the plea.

**C.      Failure to Comply with Sentencing Requirements of Iowa Code Section 901.5(9)(a).**

Chest's final argument is that the court failed to announce publicly, as required during sentencing under Iowa Code section 901.5(9)(a), that his term of incarceration could be reduced for earned time, work credits, and program credits.  Alternately, Chest argues his counsel were ineffective in failing to assert this claim as a ground for appeal and postconviction relief.

In *State v. Johnson*, 513 N.W.2d 717, 720 (Iowa 1994), our supreme court stated, "[I]n order to invalidate proceedings taken in disregard of stated procedural requirements, it must be determined that the omitted duty is essential to accomplishing the purpose of the statute as applied to the party seeking to take advantage of the omission."  The Court further determined that

> [T]he manifest intent of the requirement to announce the potential for sentence reduction under section 901.5(9) is to inform the public of the true dimension of the sentence imposed.  While the court's responsibility to comply with this directive is essential to that goal, it serves no function in imparting information to the defendant that is necessary for a valid plea and sentencing.

*Johnson*, 513 N.W.2d at 720.  Consequently, a claim under this code section would have failed.  Further, counsel has no duty to assert a meritless claim. *State v. Flintel*, 689 N.W.2d 95, 104 (Iowa 2004).  Therefore trial, appellate, and postconviction counsel were not ineffective as to this claim.

**IV.      Remedy.**

Chest asks for this court to vacate his convictions and sentence.  We have already stated the possible remedies for the State's breach of the plea agreement are withdrawal of the plea or specific performance of the agreement.

*Carrillo*, 597 N.W.2d at 500. It is within the court's discretion which remedy to use. *State v. Hinners,* 471 N.W.2d 841, 845 (Iowa 1991) (*citing Santobello v. New York*, 404 U.S. 257, 263 (1971)); *accord State v. Wenzel*, 306 N.W.2d 769, 771 (Iowa 1981)).

Chest bargained for the State to recommend concurrent sentences in a manner consistent with the established concept of a recommendation. The prosecutor's reluctant and contradictory statements breached that agreement and tainted the entire sentencing proceeding. *See State v. King*, 576 N.W.2d 369, 371 (Iowa 1998). On appellate review, we must determine the appropriate remedy for remand. Chest provides no compelling reason for us to find the guilty plea was defective or constitutionally infirm. Thus, we reject the remedy for which he argues—withdrawal of his guilty plea. The central claim of his appeal is that he did not get the benefit of the plea bargain that he negotiated with the State. We agree. The appropriate remedy, however, is that Chest should get the benefit of his bargain: a hearing before a new sentencing judge with a meaningful recommendation from the prosecutor that is consistent with the terms of the plea agreement and the established standard of a recommendation.

## V.    Conclusion.

We find the State breached the plea agreement by giving a reluctant and contradictory recommendation for concurrent sentences that fell short of the established standard. Trial counsel was ineffective in failing to object to the State's breach. Chest was prejudiced by the sentencing hearing tainted by this breach. We vacate the sentence and remand for proceedings before a new

judge and order that the State specifically comply with the plea agreement it negotiated.

**SENTENCE VACATED AND REMANDED.**