# IN THE COURT OF APPEALS OF IOWA

No. 14-1912
Filed February 10, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**OMAR PINTO SANCHEZ,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert

(motion to dismiss) and Lawrence P. McLellan (trial), Judges.


        Omar Pinto Sanchez appeals his judgment and sentence for conspiracy to

deliver methamphetamine. **AFFIRMED.**


        Benjamin D. Bergmann and Corey Bird of Parrish Kruidenier Dunn Boles

Gribble Gentry Brown & Bergmann, L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant

Attorney General, for appellee.


        Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Omar Pinto Sanchez appeals his judgment and sentence for conspiracy to deliver a controlled substance (methamphetamine). He (1) challenges the sufficiency of the evidence supporting the jury's finding of guilt, (2) contends the conviction was obtained in violation of double jeopardy principles, and (3) argues the jury should have been instructed that an acquittal need not be unanimous and he was previously acquitted of the same charge.

## I. Sufficiency of the Evidence

The jury was instructed the State would have to prove the following elements of conspiracy to deliver a controlled substance:

> 1. On or about January 21, 2013, the defendant agreed with Roger Inlow and/or Roberto Diaz-Lopez:
>    A. That one or more of them would commit the crime of delivery of a controlled substance; or
>    B. Attempt to deliver a controlled substance.
> 2. The defendant entered into the agreement with the intent to promote or facilitate the delivery of a controlled substance.
> 3. The defendant, or Roger Inlow or Roberto Diaz-Lopez, committed an overt act.
> 4. Roger Inlow and/or Roberto Diaz-Lopez were not law enforcement agents investigating the delivery of a controlled substance or assisting law enforcement agents in the investigation when the conspiracy began.

Sanchez contends the jury's finding of guilt was "based entirely on co-conspirator/accomplice testimony that [was] wholly uncorroborated." The State does not dispute that Inlow and Diaz-Lopez were accomplices whose testimony had to be corroborated. *See* Iowa R. Crim. P. 2.21(3) ("A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense . . . ."); *State v. Jennings*, 195 N.W.2d 351, 356

(Iowa 1972) ("An accomplice is a person who willfully unites in, or is in some way concerned in the commission of a crime."). The State simply argues corroborative evidence was present in the record. We agree.

A juror reasonably could have found the following background facts. Des Moines police officers enlisted a confidential informant to purchase methamphetamine from Inlow using $640 in marked bills. Officers observed the informant give Inlow the money. They followed Inlow's van to a home in the Des Moines suburb of Urbandale and watched as he parked his car and went into the home.

Meanwhile, officers also tracked a black Jeep that "showed up" at an earlier controlled drug buy involving Inlow. The Jeep traveled from Des Moines to the same Urbandale home Inlow entered and left the home around the same time as Inlow's vehicle.

Inlow returned to the confidential informant's location and gave him two bags of methamphetamine weighing approximately 3.5 grams each, which the informant turned over to police. Officers stopped Inlow and took him into custody.

Officers also stopped the Jeep shortly after following the occupants as they ran two errands. Diaz-Lopez, who was Sanchez's brother-in-law, sat in the driver's seat; Sanchez was in the front passenger seat.

Officers seized two cell phones from Sanchez's lap and $3360 in cash from his pant pocket. The cash included $420 of the $640 in marked bills given to Inlow for the drug purchase.

Sanchez agreed to speak with officers. When confronted with his possession of the marked bills, he stated he obtained them from Diaz-Lopez. Sanchez denied knowing Inlow or going to the Urbandale home.

Meanwhile, officers went to the address listed on the Jeep's registration and met Sanchez's wife, who stated Diaz-Lopez lived at the address. Officers confirmed this fact with the apartment manager. She also told them Sanchez frequented the apartment.

Officers obtained a search warrant for Diaz-Lopez's apartment. They discovered "an exceedingly large quantity" of methamphetamine. They also found a car payment receipt bearing Sanchez's name.

Officers examined the contents of the cell phones seized from Sanchez's lap and found text messages on one of the phones from a person named Nikki Welding. Welding testified she had known Sanchez for two years and the text messages from her were directed to Sanchez, not Diaz-Lopez.

With this background, we turn to the accomplice testimony. As noted, there is no question Inlow and Diaz-Lopez were accomplices. The only question is whether their testimony was sufficiently corroborated.

Inlow testified he gave Sanchez $3600 in exchange for methamphetamine and as payment on a debt. The trade took place at the Urbandale home. Inlow further testified he kept Sanchez's number as a contact in his phone.

Diaz-Lopez testified he and Sanchez kept drugs in his apartment and the two of them "would agree" upon what happened to the drugs. Because Diaz-Lopez "didn't understand English very well," Sanchez was "the one who did the dealings." On the day of their arrest, they both drove to the Urbandale home to

deliver drugs to Inlow. Sanchez went inside while Diaz-Lopez waited outside. Diaz-Lopez denied receiving any of the money from the transaction.

A reasonable juror could have found the testimony of Inlow and Diaz-Lopez corroborated by the following evidence: (1) cell phone records showing outgoing calls from Inlow's phone to the phone number connected to Sanchez by Welding; (2) the cash found in Sanchez's pocket, including the marked bills;[1] (3) the apartment manager's confirmation that Sanchez frequented Diaz-Lopez's apartment; (4) the discovery of a receipt belonging to Sanchez inside the apartment; and (5) the discovery of methamphetamine in the apartment. *See State v. Hutchison*, 341 N.W.2d 33, 37 (Iowa 1983) (stating the sufficiency of corroborative evidence is normally a question of fact determined by the jury).

We conclude the jury's finding of guilt on the charge of conspiracy to deliver methamphetamine was supported by substantial evidence. *See State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015) (stating we will not disturb a finding of guilt if substantial evidence supports it); *State v. Fintel*, 689 N.W.2d 95, 102 (Iowa 2004) (explaining an agreement to form a conspiracy "may be inherent in and inferred from the circumstances, especially declarations, acts, and conduct of the alleged conspirators").

## II.    *Double Jeopardy*

Sanchez makes several arguments grounded in the Double Jeopardy Clauses of the state and federal constitutions. *See* U.S. Const. amend. V; Iowa Const. art. I, § 12. The Double Jeopardy Clause of the Fifth Amendment protects

---

[1] A juror reasonably could have inferred that Sanchez spent the remaining marked money during his two errand runs.

against "a second prosecution for the same offense after acquittal," among other things. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). Iowa's Constitution "requir[es] that '[n]o person shall after acquittal, be tried for the same offence.'" *State v. Lindell*, 828 N.W.2d 1, 4 (Iowa 2013) (quoting Iowa Const. art. I, § 12).

Sanchez's arguments are based on the following procedural background. Sanchez was tried three times for crimes arising from this incident. The first trial ended in a mistrial because the jury could not reach a unanimous verdict.

Following the court's declaration of a mistrial, Sanchez moved to dismiss the second prosecution on several grounds. He attached a juror affidavit attesting that "the jury was 11-1 in favor of acquitting [Sanchez] of all charges" and asserted Sanchez was "sufficiently acquitted by the jury" to trigger the double jeopardy protections against retrial on the charges. The district court denied the motion after finding the juror affidavit inadmissible.

The second prosecution ended with jury findings of not guilty on the charges of possession with intent to deliver methamphetamine, delivery, and failure to affix a drug tax stamp. The sole charge on which the jury found Sanchez guilty was the charge of conspiracy to deliver methamphetamine. However, the district court granted Sanchez's motion for new trial on the conspiracy count, based on juror misconduct.

Prior to the third trial, Sanchez filed another motion to dismiss. He argued retrial on the conspiracy charge violated his constitutional rights against double jeopardy because he was acquitted of delivering a controlled substance as either a principal or an aider and abettor and he believed aiding and abetting delivery of a controlled substance "encompass[ed] all the elements" of conspiracy to deliver

a controlled substance. The district court denied the motion. The third trial on the conspiracy count resulted in a finding of guilt and this appeal.

### A. Inconsistent Verdicts

Sanchez argues "[t]he[] verdicts [in the second and third trials] are legally inconsistent" because "it is impossible for a defendant to commit conspiracy to deliver a controlled substance without also aiding and abetting delivery of a controlled substance."

The primary opinion on which Sanchez relies is *State v. Halstead*, 791 N.W.2d 805, 815-16 (Iowa 2010). Halstead was convicted of assault while participating in a felony but was acquitted on a charge of first-degree theft, the only predicate felony that could support the assault conviction. *Halstead*, 791 N.W.2d at 807. The court addressed "the validity of inconsistent jury verdicts in a criminal trial in which a single defendant is convicted on a compound offense that requires, as an element, a finding of guilt on a predicate offense." *Id*. at 806. The court held, "[I]n a case involving conviction of a compound felony when the defendant is acquitted of the underlying predicate crime, the conviction cannot stand." *Id*. at 814. The court reasoned,

> When a jury convicts a defendant of a compound offense, but acquits the defendant on a predicate offense, our confidence in the outcome of the trial is undermined.
> . . . . When a jury returns a compound inconsistency, a legal error has occurred. There is a substantial possibility that the jury has simply made an error, engaged in compromise, or engaged in some other process that is inconsistent with the notion of guilt beyond a reasonable doubt.

*Id*. at 815. *Halstead* is inapposite because Sanchez was not acquitted of a predicate felony and found guilty of a compound felony.

Conceding *Halstead* is not directly on point, Sanchez argues its rationale should be extended "to cases involving acquittal of a lesser-included offense and conviction of a greater offense." While Sanchez makes a creative and facially-appealing argument, we are not convinced our precedent supports it.

First, the *Halstead* court was careful to limit its holding to "truly inconsistent or irreconcilable" jury verdicts. *Id.* Cognizant of the concern that the holding would open "a Pandora's box," the court focused "solely on the legal impossibility of convicting a defendant of a compound crime while at the same time acquitting the defendant of predicate crimes." *Id.*

Second, Sanchez's comparison of the "elements" of "aiding and abetting" with the elements of "conspiracy" is misplaced because aiding and abetting is not a crime but an alternative method of committing a crime. *See* Iowa Code § 703.1 (2013); *State v. Spates*, 779 N.W.2d 770, 780 (Iowa 2010); *State v. Corsi*, 686 N.W.2d 215, 222 (Iowa 2004); *State v. Ayers*, No. 11-0314, 2012 WL 163034, at *1 (Iowa Ct. App. Jan. 19, 2012); *see also State v. Tyler*, ___ N.W.2d ___, ___, 2016 WL 275275, at *7-8 (Iowa 2016) (explaining aiding and abetting theory).

Finally, *Fintel*, 689 N.W.2d at 100-01, cited by the State, poses a significant hurdle for Sanchez. There, the jury acquitted the defendant of manufacturing methamphetamine but convicted him of conspiracy to manufacture methamphetamine. *Fintel*, 689 N.W.2d at 99. The Iowa Supreme Court found no inconsistency in the jury findings. *Id.* at 101. The court reasoned that the jury instruction on manufacturing a controlled substance required a completed act, whereas the instruction on conspiracy did "not require a completed manufacture." *Id.*; *see also Halstead*, 791 N.W.2d at 812 ("[*Fintel*] did

not involve a true inconsistency as one could conspire to manufacture a controlled substance without completing the offense of manufacturing.").

The same reasoning applies here. In the second trial, the jury received the obvious instruction that delivery of a controlled substance required proof of delivery. Even though Sanchez was acquitted of delivering the methamphetamine or of aiding and abetting in the delivery, the jury reasonably could have found he entered into an agreement with Inlow and Diaz-Lopez to have one of them deliver or attempt to deliver a controlled substance. Nothing in the conspiracy instruction required a completed delivery by him. Indeed, the jury was instructed, "Conspiracy is a crime separate from the crime of delivery [of] a controlled substance. The crime of delivery of a controlled substance does not have to be committed." And the jury was instructed the "overt act" element of conspiracy could be "any act indicating the person's intent to accomplish the crime of delivery of a controlled substance" and did "not have to be a criminal act."

For these reasons, we conclude double jeopardy principles were not offended by the jury's acquittal of Sanchez on the delivery charge—either as an aider and abettor or principal—and the conviction of Sanchez on the conspiracy to deliver charge. Our reasoning encompasses and resolves Sanchez's separate contention that "the jury's verdicts in this case are so logically inconsistent as to be irreconcilable." See Halstead, 791 N.W.2d at 807 (stating a verdict is factually inconsistent where "there is no legal flaw in the jury's verdict, but the verdicts seem inconsistent with the facts"). Our reasoning also resolves his contention that collateral estoppel bars the State from retrying him on the

conspiracy charge. *See id.* at 816 (stating "the doctrine of collateral estoppel is part of double-jeopardy").

### B. Effective Acquittal – First Trial

Subject to an exception not applicable here, Iowa Rule of Evidence 5.606(b) precludes a juror from testifying

> as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith . . . .

The rule "protects each of the components of deliberation including juror arguments, statements, discussions, mental and emotional reactions, *votes*, and any other feature of the process occurring in the jury room." *Ryan v. Arneson*, 422 N.W.2d 491, 495 (Iowa 1988) (emphasis added).

Sanchez contends the first jury's 11-1 vote to acquit should have been "considered an acquittal." Bypassing the State's error preservation concerns, we conclude the district court did not err in finding the juror affidavit inadmissible to establish the vote, which was a predicate to the "effective acquittal" argument. But even if the affidavit were admissible, Sanchez cites no authority for the proposition that a mistrial based on a 11-1 vote for acquittal is the equivalent of an acquittal. *See State v. Bell*, 322 N.W.2d 93, 94 (Iowa 1982) ("Because the polling showed the jury did not agree on the verdict and the jury was discharged on defendant's motion for mistrial, the jury did not decide the case. . . . [T]here was no verdict. Without a verdict there was no acquittal."). We conclude the disposition in the first trial did not preclude retrial.

### III.     Jury Instructions

#### A.     Unanimity of Acquittal

Sanchez challenges the district court's "fail[ure] to instruct the jury that acquittal need not be unanimous." Such an instruction would contravene Iowa Rule of Criminal Procedure 2.22(5), which requires unanimity in criminal jury verdicts. *See State v. Schuler*, 774 N.W.2d 294, 298 (Iowa 2009) (stating the district court has a duty to give instructions that correctly state the law). Recognizing this significant hurdle, Sanchez challenges the rule on constitutional grounds. He argues "[r]equiring a unanimous acquittal violated [his] Iowa Constitutional right to Equal Protection and Due Process." In his view, the rule treats him differently than civil litigants, whose claims may be resolved without unanimous verdicts.

Sanchez has not shown how he is similarly situated to civil litigants. Having failed to establish this threshold requirement, his equal protection argument fails. *See Varnum v. Brien*, 763 N.W.2d 862, 882 (Iowa 2009) ("[I]f plaintiffs cannot show as a preliminary matter that they are similarly situated, courts do not further consider whether their different treatment under a statute is permitted under the equal protection clause.").

As for Sanchez's due process argument, Sanchez cites an opinion addressing a substantive and procedural due process challenge to a material witness statute. *See State v. Hernandez-Lopez*, 639 N.W.2d 226, 236-42 (Iowa 2002). Sanchez does not explain how the requirement of a unanimous verdict in criminal cases violates either substantive or procedural due process. We

conclude Sanchez failed to establish that the unanimity rule violated due process.

We affirm the district court's refusal to instruct the jury that an acquittal need not be unanimous.

### B.      Prior Acquittal

Sanchez contends the district court should have instructed the jury on his prior acquittals. He argues evidence of the acquittals was "highly relevant, as the acquittals were based on the same evidence the State presented in his third trial and the events underlying the various charges are inextricably intertwined."

This court has stated, "[I]n Iowa, where there is clear proof defendant committed a previous crime, evidence of the prior bad act may be admissible under [Iowa Rule of Evidence 5.]404(b), even though an earlier jury did not believe beyond a reasonable doubt that defendant had committed the crime." *State v. Goodson*, 516 N.W.2d 30, 33 (Iowa Ct. App. 1994); *see also United States v. Brackett*, 113 F.3d 1396, 1400 (5th Cir. 1997) ("A general verdict of acquittal, exculpating the defendant of liability for a substantive offense, does not estop the government from introducing the same evidence in a subsequent prosecution for conspiracy to commit the same offense."). There is no question the State could introduce evidence from the prior trials in the prosecution of the conspiracy charge, notwithstanding Sanchez's acquittal on the other charges.

We turn to whether the jury should have been informed of the prior acquittals. This court has previously found evidence of acquittals irrelevant. *See State v. Scott*, No. 11-1128, 2012 WL 6193066, at *4 (Iowa Ct. App. Dec. 12, 2012); *accord Prince v. Lockhart*, 971 F.2d 118, 122 (8th Cir. 1992) (stating

judgments of acquittal may be relevant to issues of double jeopardy and collateral estoppel but are "not usually admissible to rebut inferences that may be drawn from the evidence that was admitted," and finding prior acquittal irrelevant to present charge). Under the circumstances of this case, we see no reason to chart a different course. Specifically, because the State refused to inform the third jury of any of the charges on which Sanchez was acquitted, we are not faced with the introduction of "half-truth[s]" regarding prior charges. *See Goodson*, 516 N.W.2d at 34; *State v. Aricivia*, 495 N.W.2d 364, 367-68 (Iowa Ct. App. 1992) ("Because the State introduced evidence surrounding the sexual abuse charges, evidence of the subsequent dismissal was also very relevant."). We conclude the district court did not abuse its discretion in declining to give the requested instruction. *State v. Becker*, 818 N.W.2d 135, 140 (Iowa 2012).

We affirm Sanchez's judgment and sentence for conspiracy to deliver a controlled substance.

**AFFIRMED.**