# IN THE COURT OF APPEALS OF IOWA

No. 19-0214
Filed April 29, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GREGORY MICHAEL DAVIS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Sean W. McPartland,

Judge.


        Gregory Davis appeals his conviction for first-degree murder.  **AFFIRMED.**


        Alfredo Parrish and Andrew Dunn of Parrish Kruidenier Dunn Boles Gribble

Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


        Heard by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Gregory Davis appeals his conviction for first-degree murder, raising challenges to the jury instructions and the competence of his trial counsel. We preserve one of his claims for a possible postconviction-relief action, deny the remainder of his claims, and affirm his conviction.

## I. Background Facts and Proceedings.

In 2017, the State charged Davis with first-degree murder in violation of Iowa Code sections 707.1 and 707.2(1)(a) (2017) after he stabbed his girlfriend, Carrie, twenty-six times. Davis claimed he was experiencing methamphetamine-induced psychosis at the time of Carrie's death and he had killed her believing it would free her from the devil. Davis filed notice that he intended to rely on insanity and/or diminished responsibility defenses at trial.

A jury trial began on September 10, 2018. Three physicians evaluated Davis and testified at trial. Two of the three were asked for their opinion on Davis's state of mind at the time of the offense. Both concluded Davis was experiencing a substance-induced psychosis when he killed Carrie, but the experts differed in their opinion on his intent to kill.

Dr. Gary Keller, a physician at the prison, diagnosed Davis with major depressive disorder, anxiety disorder, cannabis use disorder, and amphetamine use disorder with psychosis. During his evaluation he noted that Davis described some conspiracy theories, illusory conversations, and "images of Jesus," but "he acknowledged that was in his mind" and not real. Dr. Keller did not opine on Davis's mental state at the time of the killing.

Dr. Arthur Konar, the defense's expert, testified that, at the time of the killing, Davis was experiencing substance-induced psychosis and "was undergoing hallucinations and delusions and was not able to essentially keep up with or understand behavior and its consequences." Dr. Konar concluded, "What I would say is that Gregory Davis did not have the ability to form intent and . . . also did not understand how his behaviors would ultimately affect" Carrie. Dr. Konar based this opinion on Davis's report that at the time of the offense,

> [Davis] stated that he was seeing and hearing things. He had thought that Carrie was the devil. He also thought that he was the devil. He thought that the way to essentially help her was to kill her and, therefore, essentially allow her to be resurrected, because he also thought that he was Jesus Christ.
> He was having a wild additional type of paranoid delusion in which he believed that there were chickens and chicken people that were on the roof, and these chicken people were armed, and they were essentially protecting him from other people coming on in. He believed that essentially that if he had killed her, that he was going to do her a favor because he was going to at that point save her; that somehow after he killed her he believed that these Muppet hands would come on in and essentially bring life back to her and allow her to be . . . free from these horrors.

Dr. Arnold Andersen, originally an expert for the State, was called by the defense at trial. Davis's counsel did not depose Dr. Andersen before trial. Dr. Andersen testified that Davis was experiencing methamphetamine-induced psychosis, which can lead to hallucinations, delusions, hearing voices, and abnormal beliefs. On direct examination by defense counsel regarding intent, the following conversation between Dr. Andersen and defense counsel occurred,

> DR. ANDERSEN: I concluded that at the time of the alleged crime [Davis] did not have the capacity to form the specific intent of a criminal act. He did have the intent to kill [Carrie]. He, however, believed this act was morally right and necessary and that by killing her he would be freeing her of her evil forces and lead to her resurrection and perhaps life in a better location.

. . . .

DEFENSE COUNSEL: You concluded that he did not have the capacity to form specific intent at the time he committed that act?

DR. ANDERSEN: If I can nuance . . . that a bit. He had the specific intent of killing her. He did not have a specific criminal intent. His understanding was that what he was doing was morally right and necessary. So, yes, he had an intent to kill in order to do the second part of specific intent, to achieve a consequence of freeing her from evil and ushering her into a better place, but he did not have a criminal intent in that at that time he did not believe he was killing her against the law.

After the parties presented their case, the parties jointly proposed jury instructions to the court. The court then reviewed the instructions for any objections. The State proposed, and the court included over Davis's objection, an instruction about intoxication. Davis objected to some other instructions, but these objections are not relevant for this appeal.

In the final version of the instructions, instructions 14 through 16 discussed Davis's insanity defense. The marshaling instruction for first-degree murder, instruction 22, did not specifically direct the jury to consider these insanity defense instructions. Davis did not object to this omission.

The marshaling instructions for the lesser-included offenses, however, did direct the jury to consider the insanity defense, stating that if the jury found the defendant had committed the offense in the marshaling instruction, "You must then consider the defense of insanity as described in [i]nstructions 14–18." But instructions 17 and 18 explained the diminished responsibility defense, a defense that applies only to specific intent crimes. Almost all of the lesser-included offenses were general intent crimes. Davis did not object to the reference to a diminished capacity instruction in these marshaling instructions.

The case was submitted to the jury at 1:00 p.m. on September 14, and the jury reached a verdict less than three hours later. The jury found Davis guilty of first-degree murder.

Davis retained new counsel for post-trial motions. For the first time, in his motion for a new trial and later addendums, Davis claimed he was entitled to a new trial based, in part, on the court's omission of a reference to his insanity defense in the marshaling instruction for first-degree murder; the court's inclusion of an intoxication instruction in instruction 19; the court's inclusion of a reference to the diminished capacity defense in the instructions for general-intent, lesser-included offenses; and his counsel's ineffectiveness in eliciting testimony on specific intent during Dr. Andersen's direct examination. The district court denied Davis's motion for a new trial on all grounds and sentenced him to life in prison. Davis appeals.

## II. Standard of Review.

We review constitutional issues de novo. *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009). "[W]e review challenges to jury instructions for correction of errors at law." *State v. Spates*, 779 N.W.2d 770, 775 (Iowa 2010) (quoting *Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005)).

"To the extent error is not preserved on an issue, any objections must be raised within an ineffective-assistance-of-counsel framework." *State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015). We review ineffective-assistance-of-counsel claims de novo. *Id.*

### III. Analysis.

Davis challenges (1) the marshaling instruction for first-degree murder; (2) the intoxication instruction; (3) the reference to diminished capacity in the marshaling instructions for general intent lesser-included offenses; (4) the effectiveness of his counsel in questioning one of the experts on Davis's intent; and (5) the cumulative effect of these alleged errors. We address each claim in turn.

**A. First-Degree Murder Marshaling Instruction.** Davis argues that the district court erred by failing to refer to his insanity defense in the marshaling instruction for first-degree murder. The State argues Davis has failed to preserve error on this claim because his counsel did not object to the instruction on these grounds before it was given to the jury.

1. *Error preservation.* "Error preservation is important for two reasons: (1) affording the district court an 'opportunity to avoid or correct error'; and (2) providing the appellate court 'with an adequate record in reviewing errors purportedly committed' by the district court." *Id.* (quoting *State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003)). "We have previously held that to preserve error counsel must make a specific objection to the instructions in their final form. In the absence of such an objection, any alleged error in the instruction is waived." *State v. Welch*, 507 N.W.2d 580, 584 (Iowa 1993) (citations omitted); *see also State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("We have repeatedly held that timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review.").

Raising an objection for the first time in a motion for a new trial cannot preserve error unless the objection is based on revised or additional instructions. *See* Iowa R. Crim. P. 2.19(5)(f) ("The rules relating to the instruction of juries in civil cases shall apply to the trial of criminal cases."); Iowa R. Civ. P. 1.924 (establishing rules for jury instructions, including error preservation); *State v. Rouse*, 290 N.W.2d 911, 915 (Iowa 1980) ("We hold, therefore, that Iowa R. Civ. P. 196 [later renumbered to rule 1.924], including its requirement of timely preservation of error as to instructions, shall be fully applicable to all criminal cases in which trial is commenced after the filing of this opinion. Any of the language of our earlier cases inconsistent with this holding is expressly disapproved."), *superseded by statute on other grounds as recognized in Ryan v. Arneson*, 422 N.W.2d 491, 494 (Iowa 1988).

Here, the parties jointly proposed two alternatives for instruction 22, the first-degree murder marshaling instruction. The State proposed 22A, which did not include a cross-reference to the insanity defense instructions, and Davis's counsel proposed 22B, which included the cross-reference. Instruction 22B also included an additional element not listed in the model jury instruction for first-degree murder, which required the jury to find that Davis intentionally killed Carrie.

The court accepted Instruction 22A as the final first-degree murder marshaling instruction and renumbered it to instruction 22. Davis's counsel did not object to this instruction for failing to cross-reference the insanity defense. For that reason, we conclude that Davis has failed to preserve error on his claim that the marshaling instruction violated his right to due process and was clearly erroneous.

Even so, we find his claims would fail. Davis cannot show that the district court's failure to include a reference to the insanity defense in the marshaling instruction meets the high bar to prove a due process violation. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (noting that, in determining whether there was a due process violation based on an erroneous jury instruction, the court must decide, looking at the instructions in their entirety, "whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process." (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991))). Likewise, Davis cannot show the instruction was erroneous. *State v. Benson*, 919 N.W.2d 237, 245 (Iowa 2018) (noting we must determine "whether the jury instructions 'convey[ed] the applicable law in such a way that the jury ha[d] a clear understanding of the issues' before it." (quoting *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 892 (Iowa 2015))). As explained below, the instructions, read in their entirety, accurately convey the applicable law and gave the jury a clear understanding of the issues.

2. *Ineffective assistance of counsel.* In the event that error was not preserved, Davis raises an ineffective-assistance-of-counsel claim, arguing his counsel should have objected to the omission of the insanity defense from the marshaling instruction.[1] The Iowa Supreme Court's recent opinion in *State v. Kuhse*, 937 N.W.2d 627, 628–29 (Iowa 2020), guides our analysis here. .

---

[1] "Although the Iowa Code no longer permits claims of ineffective assistance of counsel to be decided on direct appeal . . ., we held in *State v. Macke*[, 933 N.W.2d 226, 228 (Iowa 2019),] that this provision 'do[es] not apply to a direct appeal from a judgment and sentence entered before July 1, 2019.'" *State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020). For that reason, we are not foreclosed from

"In order to support a claim of ineffective assistance of counsel, a defendant must show (1) that counsel failed to perform an essential duty and (2) that prejudice resulted." *Kuhse*, 937 N.W.2d at 628. "To prove counsel failed to perform an essential duty, the defendant 'must show that counsel's performance was deficient,' meaning counsel 'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The crux of the prejudice component rests on whether the defendant has shown 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

> To establish prejudice in the context of an ineffective-assistance-of-counsel claim, a defendant must show a reasonable probability that the result of the trial would have been different. The likelihood of a different result must be substantial, not just conceivable. A defendant must show the probability of a different result is sufficient to undermine confidence in the outcome. This standard requires us to consider the totality of the evidence, identify what factual findings would have been affected, and determine if the error was pervasive or isolated and trivial.

*Id.* (quoting *Ambrose*, 861 N.W.2d at 557–59); *see also State v. Lorenzo Baltazar*, 935 N.W.2d 862, 871–72 (Iowa 2019) (discussing difference between the presumed prejudice standard for preserved jury-instruction challenges and the "deficiency and prejudice" standard for ineffectiveness claims).

"Jury instructions are not considered separately; they should be considered as a whole." *Kuhse*, 937 N.W.2d at 628 (quoting *State v. Fintel*, 689 N.W.2d 95,

---

considering Davis's ineffectiveness claim on direct appeal if we find the record supports our review. *See id.* We find the record adequate.

104 (Iowa 2004)). We will consider whether the instructions, taken together, contain all of the necessary information. *Id.* at 628–29.

In *Kuhse,* the defendant was charged with domestic abuse assault causing bodily injury after it was alleged he assaulted his wife. *Id.* at 624–25. He filed notice that he intended to rely on a justification defense. *Id.* at 625. At trial, the marshaling instruction for domestic abuse assault did not refer to his justification defense, but other instructions did. *Id.* He was found guilty as charged.

On appeal, the defendant argued his counsel was ineffective for failing to object to the marshaling instruction's omission of the justification defense. The Iowa Supreme Court addressed ineffectiveness related to jury instructions,

> [I]neffective assistance of counsel does not necessarily occur when defense counsel fails to object that a marshaling instruction does not refer to a required element of a defense—or cross-reference a defense that the State is required to disprove. Instead, one must examine the record and consider the evidence presented, how the case was tried, and what the jury instructions as a whole said.

*Id.* at 630.

The court, considering the evidence and instructions together, determined that the defendant was not prejudiced by the omission of a justification defense from the marshaling instruction. *Id.* The court noted that eight instructions discussed the justification defense and one instruction informed the jury, "The State must prove the Defendant was not acting with justification." *Id.* The court noted that the justification defense was a focal point in the parties' closing arguments. Also important was the fact that strong evidence showed that the defendant was not acting in self-defense at the time of the assault and that the defendant's version of events was not plausible. *Id.* at 630–31. The court

determined, "Viewing the instructions and the trial record as a whole, we do not see a reasonable probability of a different outcome if the marshaling instruction on domestic abuse assault causing bodily injury had included or cross-referenced lack of justification." *Id.* at 631.

For similar reasons, we conclude that Davis cannot show prejudice here. Starting with the instructions themselves, we find that they accurately instructed the jury on the applicable law. The jury was given fifty-one instructions. Twenty-one were standard criminal instructions. Ten instructions were marshaling instructions for the offense charged—first-degree murder—and lesser-included offenses, and fourteen instructions included definitions for terms used in the marshaling instructions. Of the remaining instructions, three were about the insanity defense, two were about diminished responsibility, and one was about intoxication.

Turning to specific instructions, instruction 7 states, "You must determine the defendant's guilt or innocence from the evidence and the law in these instructions. You must consider all of the instructions together. No one instruction includes all of the applicable law." Instruction 14 provides, "The Defendant claims he is not guilty by reason of insanity. You must first determine if the State has proved all the elements of the crime charged beyond a reasonable doubt. If you find the State has proved all the elements, then you must consider the issue of the Defendant's sanity." Instruction 16 states, "If the State has proved all the elements of a crime, you should then determine if the Defendant has proved he was insane."

Instruction 22 correctly recites the elements of first-degree murder.[2] These instructions, read together, correctly instruct the jury on the applicable law.

In addition, the arguments and evidence presented show that insanity was a key focus at trial. The State did not specifically reference the insanity defense during opening argument, but it did emphasize that the killing "was a deliberate and intentional act" and that "Davis knew at the time that what he was doing was wrong." The defense's opening argument focused exclusively on Davis's insanity defense, with counsel walking through Davis's various diagnoses, his drug use, what the experts were likely to testify to, and the standard to prove insanity. Counsel concluded, "We believe that this evidence will be so compelling, and that is why you are going to return a verdict of not guilty by reason of insanity."

Moreover testimony at trial centered on Davis's mental health. Three experts testified about Davis's mental state, with two giving their opinions on whether he was capable of forming intent. The jury also heard testimony from Davis's mother about his mental health, and the jury heard officers testify about notes Davis wrote after the killing. This evidence was all presented to show whether or not Davis was sane when he killed Carrie.

During closing arguments, the State focused on instruction 22 and argued that Davis's actions were conscious, deliberate, and intentional. The State

---

[2] Instructions 14 through 16 mirror the model instructions about an insanity defense. The model instruction on which instruction 14 is based has a comment to the model instruction stating, "Caveat: If the insanity defense is submitted, then the marshaling instruction should be modified accordingly." *See* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 200.9 cmt (2018). Instruction 22 mirrors the model instruction for first-degree murder based on premeditation, willfulness, and deliberation. This model first-degree murder instruction does not include any comments. *See* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 700.1.

highlighted evidence presented during trial suggesting Davis intended his actions, including: Davis covered blood in the living room from the stabbing with a mattress; he packed bloody clothing in a bag for easy disposal; police discovered cut up credit cards in the driveway; Carrie's body was wrapped in a sheet and three blankets and rolled in cut-up carpeting to conceal her; her body was moved in the nighttime to another location; Davis wrote and then tore up a note admitting his "vicious attack," which the State suggested was his suicide note; and officers when searching Davis's garage found a step ladder underneath a power cord fashioned with a loop around the steel beam of the garage door opener, which the State alleged also showed Davis was considering suicide. All of this evidence, the State argued, showed a deliberate and intentional choice to kill Carrie.

Defense counsel pointed out that the insanity defense was not specifically discussed in instruction 22, stating, "One of the elements that [the prosecutor] did not address which has been the core of this case since we started . . . we talked about it from voir dire, opening statement. It was never a whodunit. It was a why." Defense counsel then discussed the expert testimony and the defenses of diminished capacity and insanity in depth before concluding, "If you believe those doctors, then it is not murder in the first degree. It's murder in the second degree or not guilty by reason of insanity." In rebuttal, the State sought to address the factors that showed that Davis understood what he was doing at the time.

After considering the totality of the circumstances, including the instructions together with the arguments and evidence presented at trial, we conclude Davis cannot show the result would have been different sufficient to satisfy the prejudice prong of his ineffectiveness claim. *See State v. Ondayog*, 722 N.W.2d 778, 784

(Iowa 2006) (noting that the prejudice prong is met when a defendant can show a reasonable probability that without counsel's alleged errors the result would have been different); *see also State v. McMullin*, 421 N.W.2d 517, 520 (Iowa 1988) (concluding "[t]he jury was fully instructed on the elements of first-degree murder and the State's responsibility to prove them," and that "the instructions as given, when read as a whole, state the applicable law in understandable fashion"). While we encourage trial courts in cases like this to include a reference to an insanity defense in the marshaling instructions, Davis has not shown the result would be different but for the omission.

Because Davis cannot show prejudice, we need not consider whether counsel breached an essential duty. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) ("If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently."). Davis's ineffectiveness claim fails.

**B. Intoxication Instruction.** At trial, the State proposed an instruction on intoxication, and this instruction was included in the parties' joint instructions.[3] Davis's attorney objected and asked that the instruction be excluded. The court

---

[3] The instruction stated in part,

> The Defendant claims he was under the influence of drugs at the time of the alleged crime. The fact that a person is under the influence of drugs does not excuse nor aggravate his guilt.
>
> Even if a person is under the influence of a drug, he is responsible for his act if he has sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the drug and then committed the act. Intoxication is a defense only when it causes a mental disability, which makes the person incapable of forming the specific intent.

overruled the objection, stating, "I don't think that the defense can offer evidence, which it did in this case, of the defendant's chronic drug use and offer testimony through [experts] that he was under the influence of drugs at the time and then not have this instruction given."

Davis argues it was error to give this instruction to the jury because there was no evidence that he was drug tested at the time of the offense, and the expert testimony related only to long-term drug usage to help the jury understand a complex medical diagnosis. Davis also claims the evidence did not support an intoxication instruction and intoxication was inconsistent with his insanity defense. He argues the instruction was erroneous and violated his right to due process.

"It is well settled that the court must instruct on all material issues so that the jury understands the matters which they are to decide." *State v. Jenkins*, 412 N.W.2d 174, 177 (Iowa 1987). "Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *State v. Plain*, 898 N.W.2d 801, 816 (Iowa 2017) (quoting *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016)). "The court ordinarily is required to instruct the jury on all material issues raised by the evidence." *State v. Voelkers*, 547 N.W.2d 625, 632 (Iowa Ct .App. 1996). "The district court must 'avoid arguing the case for either side in the instructions.'" *Id.* (quoting *State v. Marsh*, 392 N.W.2d 132, 133 (Iowa 1986)). Instructions on defenses "should not be submitted unless the evidence would sustain an affirmative finding on that issue." *State v. Booth*, 169 N.W.2d 869, 871 (Iowa 1969). A defendant is prejudiced by an instruction if "the instruction could reasonably have misled or

misdirected the jury." *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015) (quoting *State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012)).

There was ample testimony about Davis's methamphetamine use leading up to the time of the killing. Davis's insanity and diminished capacity defenses were based on the allegation that he was experiencing a methamphetamine-induced psychosis. Dr. Andersen testified about Davis's drug use before and on the day of the killing, noting,

> He increased in the year of the alleged crime his use of methamphetamine. A typical dose might be a hundred milligrams or a quarter gram. He went to as much as three and a half grams, called in the community an eightball. And so on the day of this act he was using a heavy dose and continued through about October 1st, if I have my dates correct, at which time he stopped and some clarity of mind returned.

There was also testimony about the distinction between voluntary and involuntary intoxication, including Dr. Konar's testimony that in his opinion Davis's methamphetamine addiction was like involuntary intoxication. *Cf. State v. Aguilar*, 325 N.W.2d 100, 103 (Iowa 1982) ("[W]hen the evidence shows the mental condition at issue was caused by voluntary intoxication it is sufficient to instruct on that issue and not give an additional instruction on diminished responsibility generally."). We conclude the instruction accurately stated the law and was supported by the evidence presented at trial. *See Jenkins*, 412 N.W.2d at 177 (concluding that including an intoxication instruction over defendant's objection was not error). For that reason, Davis cannot show the instruction was erroneous.

**C. Diminished Responsibility Instruction.** Davis argues it was error for the court to include a reference to instructions 17 and 18, discussing his diminished capacity defense, in the marshaling instructions for general intent lesser-included

offenses because this defense only applies to specific intent crimes.  *See Afinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008).  For the reasons stated in our discussion of the first-degree murder marshaling instruction, we find Davis has failed to preserve error on this claim.

Even so, any potential error is harmless.  The jury found Davis guilty of first-degree murder, specifically rejecting a diminished responsibility defense.  Davis cannot show he was prejudiced by the court's inclusion of a reference to the diminished responsibility instructions in the lesser-included offenses.  For that reason, Davis also cannot establish prejudice under an ineffectiveness framework.

**D.  Specific Intent Testimony.**  Davis next argues that his counsel was ineffective when he elicited testimony that Davis had the specific intent to kill Carrie.  Davis argues this was improper opinion testimony and his counsel should have requested Dr. Andersen's response be stricken from the record and the question be rephrased to elicit proper expert testimony.

A criminal "defendant's mental condition is peculiarly a matter of expert evaluation and analysis."  *State v. Moses*, 320 N.W.2d 581, 588 (Iowa 1982).  That said, no witness may opine on an ultimate issue at trial.  *Id.* at 587–88; *see also, e.g.*, *State v. Nimmo*, 247 N.W.2d 228, 230 (Iowa 1976) (ruling the expert witness was not permitted to testify about whether the amount of marijuana defendant possessed would exceed personal use).

"Courts generally presume counsel is competent and a 'defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Ondayog*, 722 N.W.2d at 785 (quoting *State v. Wissing*, 528 N.W.2d 561, 564 (Iowa 1995)).  "Because '[i]mprovident trial

strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel,' postconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance." *Id.* at 786 (quoting *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992)).

We find the record insufficient to address this claim on direct appeal. We preserve this claim for a possible postconviction-relief application.

**E. Cumulative Effect.** Finally, Davis argues the cumulative effect of the constitutional and evidentiary errors violated his right to a fair trial and due process. *See State v. Carey*, 165 N.W.2d 27, 36 (Iowa 1969) (concluding that the cumulative effect of errors deprived the defendant of a fair trial). Because we find Davis has failed to preserve error on two jury instruction claims and failed to show prejudice on the third, and because we have preserved one of his ineffectiveness claims for postconviction relief proceedings, he cannot show cumulative errors.

**IV. Disposition.**

For all of these reasons, we affirm Davis's conviction and sentence for first-degree murder.

**AFFIRMED.**

Bower, C.J., concurs; Ahlers, J., dissents.

**AHLERS, Judge** (dissenting).

In the words of defense counsel at oral argument, "these jury instructions were all messed up." I agree. And, in my view, they were so "messed up," they deprived Davis of a fair trial. In particular, the error of failing to include a cross-reference to defenses in the marshaling instruction for the first-degree murder charge while including the cross-reference in the marshaling instructions for all lesser-included charges created confusing and misleading instructions that warrant a new trial. Because I find this issue dispositive, it is unnecessary to address the other issues raised.

To begin, I agree with much of the well-written and thorough majority opinion, including its description of the events at trial. I agree Davis failed to preserve error on his challenge to the missing cross-reference to defenses in the first-degree murder marshaling instruction, so the challenge must be addressed under an ineffective-assistance-of-counsel framework. This framework requires Davis to show: (1) counsel's performance was deficient to the extent counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment of the United States Constitution; and (2) the deficient performance resulted in prejudice such that Davis was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Due to the fact it found that Davis failed to meet the prejudice prong, the majority understandably chose not to address the deficient-performance prong. *See id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). As I will discuss in a moment, I disagree with the

majority's conclusion regarding prejudice. Therefore, it is necessary for me to also address the deficient-performance prong.

I believe trial counsel breached an essential duty by failing to object to the first-degree murder marshaling instruction that neglected to cross-reference the insanity defense instructions while the marshaling instructions for all lesser-included offenses included the cross-reference. The model jury instruction addressing the insanity defense includes a caveat to modify the marshaling instruction when the insanity defense is submitted. *See* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 200.9 (2018). Furthermore, trial counsel submitted a proposed marshaling instruction for first-degree murder that included the cross-reference, suggesting trial counsel knew such a cross-reference was needed and important. Inexplicably, when the district court submitted a marshaling instruction for first-degree murder that omitted the cross-reference, while submitting marshaling instructions for lesser-included offenses that included it, trial counsel lodged no objection. There is no conceivable trial tactic or strategy for allowing the marshaling instruction for first-degree murder, the most serious charge, to be submitted without the cross-reference to the key defense while allowing the marshaling instructions for the lesser-included offenses to include the cross-reference. *See State v. Neal*, 353 N.W.2d 83, 86 (Iowa 1984) (finding it appropriate to address ineffective-assistance-of-counsel claim on direct appeal when there is "no conceivable trial tactic or strategy" to justify counsel's actions). Under these circumstances, trial counsel's performance in this regard was unacceptably deficient.

Turning to the prejudice prong, Davis must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* My confidence in the outcome of this trial is significantly undermined as a result of the problem with the cross-reference to defenses in the marshaling instructions.

Instruction 22 set forth the elements for first-degree murder and then instructed the jury:

> If the State has proved all the elements, the Defendant is guilty of Murder in the First Degree. If the State has failed to prove any one of the elements, the Defendant is not guilty of Murder in the First Degree and you will then consider the charge of Murder in the Second Degree as explained in Instruction No. 30.

Instruction 30 in turn set forth the elements for second-degree murder and then instructed the jury:

> If the State has proved all the elements, the Defendant is guilty of Murder in the Second Degree. *You must then consider the defense of insanity as described in Instructions No. 14–18.* If the State has failed to prove any one of the elements, the Defendant is not guilty of Murder in the Second Degree and you will then consider the charge of Voluntary Manslaughter as explained in Instruction No. 32.

(Emphasis added.) Subsequent instructions for all the lesser-included offenses followed this language in Instruction 30, including the cross-reference to defenses. Omitting the cross-reference to defenses in the first-degree murder marshaling instruction while including it in the marshaling instructions for the lesser-included offenses in this way was confusing, misleading, and, thus, prejudicial. *See State v. Benson*, 919 N.W.2d 237, 245-46 (Iowa 2018) (holding confusing and misleading jury instructions are prejudicial and warrant a new trial).

I stress the fact the cross-reference was included for some charges but not all because it is critically important for two reasons. First, it distinguishes this case from others decided by our appellate courts. Second, it makes the instructions in this case confusing, misleading, and prejudicial regardless of how the case was tried.

The State relies on two cases to support its argument the cross-reference issue did not cause reversible error. Both cases are distinguishable. In *State v. Stonerook*, our court rejected an ineffective-assistance-of-counsel claim for failing to object to a first-degree murder marshaling instruction that did not include a cross-reference to the defendant's insanity defense. No. 05-1917, 2006 WL 3799546, at *2 (Iowa Ct. App. Dec. 28, 2006).[4] Importantly, nowhere in *Stonerook* are lesser-included offenses mentioned. This suggests either lesser-included offenses were not submitted or, more likely, they were submitted but also omitted the cross-reference. At the very least, *Stonerook* did not address the issue in this case, which is an inconsistency between the marshaling instructions in terms of cross-referencing defenses. Therefore, *Stonerook* does not control the outcome in this case.

In *State v. Kuhse*, the supreme court rejected an ineffective-assistance-of-counsel claim for failing to object to a domestic-abuse-assault-causing-bodily-injury marshaling instruction that did not include a reference to the defendant's justification defense. 937 N.W.2d 622, 630–31 (Iowa 2020). Just as in *Stonerook*,

---

[4] In spite of the holding, the court noted that including the cross-reference would have been appropriate and "perhaps preferable." *Stonerook*, 2006 WL 3799546, at *3.

however, there is no indication in *Kuhse* that the missing reference to the defense in the marshaling instruction to the primary charge was included in the marshaling instructions to the lesser-included charges. Again, this key detail distinguishes the cases and, in my view, requires a different result.

A different result is required due to the misleading nature of the marshaling instructions in this case. The effects of the misleading instructions were not negated by "how the case was tried" or by looking at the jury instructions as a whole. As the majority rightly highlights, in *Kuhse*, the supreme court noted "one must examine the record and consider the evidence presented, how the case was tried, and what the jury instructions as a whole said." *Id.* at 630. I, in no way, question that principle, as it is a sound one. However, there is a critical difference between this case, *Kuhse*, and *Stonerook*, and that is the contradictory nature of the cross-reference to the defenses in the marshaling instructions.

I have no doubt, based on the evidence submitted and the arguments made, that the jury was well aware the insanity defense was the fighting issue in this case—just as the juries would have been aware the defenses were the fighting issues in *Kuhse* and *Stonerook*. I also acknowledge the jurors in all three cases were instructed they "must consider all of the instructions together," and we presume the jurors follow the instructions. *See State v. Morrison*, 368 N.W.2d 173, 176 (Iowa 1985) ("A jury is presumed to have followed its instructions absent evidence to the contrary.").

However, once the dust settles after the evidence is submitted, the closing arguments are finished, and the jurors gather in the jury room to deliberate, the only resource they have to guide them in terms of the law in the case is the jury

instructions. But, what do the jury instructions in this case tell them? Assuming, as we should, the jurors read all the instructions, including instructions 14 through 18 dealing with various defenses, they would also read the marshaling instructions. Conspicuously absent from the marshaling instruction for first-degree murder is any reference to the defenses. That in and of itself might not be a problem but for the fact that the marshaling instructions for all other crimes conspicuously mention the defenses. Keeping in mind the jury is composed of twelve lay persons, what would a reasonable lay person conclude by that different treatment of the marshaling instructions? I firmly believe a reasonable juror would conclude the omission of the reference to the defenses in the first-degree murder instruction, and only the first-degree murder instruction, meant that crime was different and the defenses did not apply only to that charge. *See State v. Rinehart*, 283 N.W.2d 319, 322 (Iowa 1979) (evaluating how a reasonable juror would interpret an instruction). "Expressio unius est exclusio alterius"[5] is a maxim we apply in a variety of areas of the law, including statutory interpretation and contract construction. *See, e.g.*, *Homan v. Branstad*, 887 N.W.2d 153, 166 (Iowa 2016) (applying the maxim to statutory interpretation); *Peak*, 799 N.W.2d at 548 (applying the principle to contract construction). Presumably we apply this maxim because it makes logical sense. Although the jurors were obviously not instructed on this maxim, the idea behind it would make a reasonable juror conclude the omission of the reference to the defenses meant they did not apply.

---

[5] This is a Latin phrase meaning "the expression of one thing of a class implies the exclusion of others not expressed." *Peak v. Adams*, 799 N.W.2d 535, 548 (Iowa 2011) (quoting *Maytag Co. v. Alward*, 112 N.W.2d 654, 656 (1962)).

To clarify the point, it may be useful to think of a hierarchy of methods to deal with defenses and marshaling instructions. The first method would be the one suggested in the model jury instructions, urged by Davis, and referenced as "perhaps preferable" in *Stonerook*, which is to include cross-references to all relevant defenses in all relevant marshaling instructions. The second method would be the one used in *Stonerook* and *Kuhse*, which is to omit *all* cross-references to defenses in *all* marshaling instructions and rely on the jury to thoroughly read the instructions and apply defenses appropriately. The third method, which is the one used in this case, would be to omit cross-reference to relevant defenses in one marshaling instruction and include cross-reference to defenses in other marshaling instructions. In my view, the first method is clearly the preferred and best of the three and should be encouraged and enforced. The second method, while less than ideal and not preferred, may be found acceptable on a case-by-case basis, as it was in *Stonerook* and *Kuhse*, and as I would have reluctantly found in this case if this method had been followed. The third method, in my view, is unacceptable, and a hard line should be drawn between the second and third methods. The third method has no benefits and numerous deficits, and its use in this case deprived Davis of a fair trial.

I believe the conflicting cross-references in the marshaling instructions made the instructions confusing, misleading, and prejudicial. Trial counsel's failure to object was deficient performance that resulted in prejudice to Davis and constituted ineffective assistance of counsel. Davis should receive a new trial as a result.

I am not unmindful of the import of my proposed resolution. I am mindful that Davis unquestionably committed unspeakably horrible acts. I am mindful that a fellow human being had her life unfairly taken from her. I am mindful that a new trial would result in additional pain to the victim's family and may reopen emotional wounds that would be better left to heal. I am mindful that a new trial would be expensive, challenging, and painful. But I am also mindful that our system demands a fair trial and Davis did not get one. Therefore, I respectfully dissent.